# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-3383

_____

| | | |
|---|---|---|
| Larry W. Nixon, Husband, individually and on behalf of all others similarly situated; | * * * * | |
| Amy B. Nixon, Wife, individually and on behalf of all others similarly situated; | * * * * | |
| Michael D. Lathem, individually and on behalf of all others similarly situated, | * * * * | |
| Plaintiffs - Appellants, | * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| AgriBank, FCB, | * * | |
| Defendant - Appellee. | * | |

_____

Submitted: April 20, 2012
Filed:  July 25, 2012

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiffs, successors in title to land located in Van Buren County, Arkansas, brought a declaratory judgment action in Arkansas state court against AgriBank, FCB, seeking to quiet title to oil and gas rights that AgriBank holds in Plaintiffs' land. AgriBank removed the case to the United States District Court for the Eastern District of Arkansas and thereafter moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court[1] granted the motion, identifying two bases on which to do so: first, that a regulation promulgated by the Farm Credit Administration specifically approved of the sort of ownership interests held by AgriBank that the Plaintiffs now attack; and second, that the challenge to AgriBank's oil and gas rights was based on a repealed act of Congress. We affirm.

I.

Plaintiffs' predecessors in interest purchased the land in question from the Federal Land Bank of St. Louis (the Land Bank) on October 10, 1938, and January 10, 1939. The Land Bank acquired, and disposed of, the land pursuant to the Federal Farm Loan Act of 1916 (the Act), Fed. Land Bank of Wichita v. Bd. of Cnty. Comm'rs, 368 U.S. 146, 147, 151 (1961), which was repealed in its entirety by the Farm Credit Act of 1971. Pub. L. No. 92-181, 85 Stat. 583 (1971). In both conveyances, the Land Bank reserved for itself "an undivided one-half (1/2) of all oil, gas, coal and other minerals in, upon and under the above described land." Those reservations included no temporal limitation. It is pursuant to those reservations that Defendant, as the Land Bank's successor in interest, purports to retain an interest in the mineral rights attendant to Plaintiffs' land.

The Act under which the Land Bank operated placed limits on a land bank's ability to hold land. Specifically, the Act "limited the period of ownership to five

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

years unless special permission could be obtained from the Farm Credit Administration." Fed. Land Bank of Wichita, 368 U.S. at 148. The Act stated: "'no such bank shall hold title and possession of any real estate purchased or acquired to secure any debt due to it, for a longer period than five years, except with the special approval of the Farm Credit Administration in writing.'" Fed. Land Bank of Wichita, 368 U.S. at 148 n.3 (quoting 12 U.S.C. § 781 Fourth (repealed 1971)). That limitation then became nugatory, at least with respect to a land bank's retention of mineral rights, on January 1, 1943, when the Farm Credit Administration promulgated a regulation that authorized all banks to hold mineral rights in excess of five years. Fed. Land Bank of Wichita v. Bd. of Cnty Comm'rs of Kiowa Cnty, 354 P.2d 679, 682 (Kan. 1960) (rev'd on other grounds by Fed. Land Bank of Wichita, 368 U.S. at 156) (noting date of regulation's promulgation). That regulation, which "grant[ed] blanket permission to all land banks to hold mineral rights longer than five years," Fed. Land Bank of Wichita, 368 U.S. at 148, stated:

> Holding mineral rights for more than 5 years. In cases where, in connection with a sale of bank-owned real estate, the bank has retained royalty or other rights in or to minerals, and desires to hold such rights for a period in excess of 5 years, it is not considered that the bank has both "title and possession" of real estate within the meaning of section 13 Fourth (b) of the Federal Farm Loan Act (12 U.S.C. 781 Fourth (b) (12 U.S.C.A. s 781 Fourth (b))). *However, retention of such minerals and mineral rights for periods in excess of 5 years, when in the bank's opinion it is in the bank's interest to do so, has the approval of the Administration.*

Fed. Land Bank of Wichita, 368 U.S. at 153 (quoting 6 C.F.R. § 10.64) (emphasis added).

In seeking to quiet title to the mineral rights held by Defendants, Plaintiffs argued that the earlier-granted reservations were subject to the five-year statutory limit, notwithstanding the later-promulgated regulation's blanket grant of approval.

-3-

The district court held, *inter alia*, that the reservations at issue in this case did not violate the Act because the regulation gave the Land Bank the "special approval" for the mineral rights reservations as required by the Act. According to the district court, such approval thereby removed the reservations from the Act's five-year limit.

## II.

The district court provided two independent rationales for granting AgriBank's dismissal motion. Both are legal conclusions that we review de novo. Turkish Coal. of Am., Inc. v. Bruininks, 678 F.3d 617, 623 (8th Cir. 2012). First, the district court concluded that the above-quoted regulation exempted the mineral rights in question from the Act's five-year limitation. Second, the district court cited a recent case from this court for the proposition that a repealed statute may not be enforced "unless competent authority has kept the statute alive for that purpose." Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 676 (8th Cir. 2009) (internal quotation marks omitted). The district court concluded that because the Act has been repealed, and because no competent authority has kept the Act alive, the Act cannot form the basis of the Plaintiffs' challenge to AgriBank's mineral rights.

Challenging the district court's first rationale, Plaintiffs argue that the regulation does not apply in this case because the Land Bank acquired the mineral rights more than five years prior to the date the regulation was promulgated. While the Land Bank's sale of land and simultaneous reservation of mineral rights occurred *fewer* than five years prior to the regulation's promulgation, the Land Bank first came into possession of the land *more* than five years before the regulation's promulgation. Thus, the Plaintiffs argue that the relevant date is when the Land Bank first acquired the land, as opposed to when the Land Bank reserved the mineral rights in question.

While that premise is debatable,[2] any dispute on this point is irrelevant. Even if we assume that the Land Bank obtained the mineral rights more than five years before the regulation's promulgation, we still must conclude that the regulation's text is broad enough to insulate those mineral rights from the Act's five-year limitation. Specifically, the second portion of the regulation—which approved the "retention of such minerals and mineral rights for periods in excess of 5 years"—exempted the rights at issue in this case from the Act's limitations.

The Act's five-year limitation was subject to abrogation upon "the special approval of the Farm Credit Administration in writing." 12 U.S.C. § 781 Fourth (repealed 1971). The FCA gave just such approval, in writing, when it promulgated a regulation stating that "'retention of such minerals and mineral rights for periods in excess of 5 years . . . has the approval of the Administration.'" Fed. Land Bank of Wichita, 368 U.S. at 153 (quoting 6 C.F.R. § 10.64). "[S]uch minerals and mineral rights," in turn, refers to "cases where, in connection with a sale of bank-owned real estate, the bank has retained royalty or other rights in or to minerals, and desires to hold such rights for a period in excess of 5 years." Id. Under the plain text of the Act and the regulation, the Land Bank received the FCA's written approval for the "retention of . . . mineral rights for periods in excess of 5 years" and was therefore empowered to hold the mineral rights in question beyond five years. Id.

Neither the Act nor the regulation provide textual support for the Plaintiffs' distinction between mineral rights acquired prior to five years before the regulation was promulgated and such rights acquired after that point. Rather, the regulation's use of the past tense—"In cases where . . . the bank *has retained* royalty or other

_____

[2]In Arkansas, "[a] reservation is a clause in a deed whereby the grantor reserves some new thing to himself, issuing out of the thing granted which was not *in esse* before." Wallner v. Johnson, 730 S.W.2d 253, 256 (Ark. Ct. App. 1987). Under this precedent, it would seem that the Land Bank did not hold the specific interests at issue more than five years before the FCA promulgated the regulation.

rights . . . ."—suggests that the regulation was intended to apply to reservations already held by the various land banks.  Id. (emphasis added).  Indeed, the Supreme Court characterized the regulation as granting "*blanket* permission to all land banks to hold mineral rights longer than five years."  Fed. Land Bank of Wichita, 368 U.S. at 148 (emphasis added).  Accordingly, the reservations at issue enjoyed the FCA's approval and were not subject to the Act's five-year limitation.

Because we conclude that the district court was correct in holding the Act's five-year limitation inapplicable to the mineral rights at issue, we need not review the district court's alternative rationale for dismissal.  See Misischia v. St. John's Mercy Health Sys., 457 F.3d 800, 805 (8th Cir. 2006).  We affirm the judgment of the district court.

_____