**CITY OF WACO, Petitioner,**

v.

**TEXLAND CORPORATION et al.,
Respondents.**

No. B–871.

Supreme Court of Texas.

July 30, 1969.

Rehearing Denied Nov. 12, 1969.

Earl Bracken, Jr., City Atty., Don J. Rorschach, Asst. City Atty., Waco, Thomas R. Hunter, Dallas, for petitioner.

Bryan, Wilson, Olson & Stem, Lyndon Olson, Sheehy, Jones, Cureton, Westbrook & Lovelace, John F. Sheehy, Waco, for respondents.

STEAKLEY, Justice.

Texland Corporation and W. M. Kelly filed separate suits against the City of Waco for damages to their property which they alleged was caused by the construction of a viaduct on South 17th Street. The trial court consolidated the two suits for a jury trial. A jury found that Texland's property was damaged $9,500.00 and Kelly's property was damaged $6,000.00. The trial court judgment for Texland and Kelly in these amounts was affirmed by the Court of Civil Appeals. 425 S.W.2d 374. We agree that these properties have been damaged for a public use under Section 17 of Article 1 of the Constitution of Texas, Vernon's Ann.St., which provides:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made * * *."

In DuPuy v. City of Waco, 396 S. W.2d 103 (Tex.Sup.1965), we reaffirmed the settled rule in this State that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage. We wrote further in *DuPuy* that (a) the concept of damaging under the Constitution does not embrace a right to compensation where a property owner has reasonable access to his property after construction of the public improvement; and (b) the resolution of the problem of whether access has been so impaired that it can properly be said that the private easement in the street has been damaged is a threshold question of law for determination by the Court. Our continuing study of this admittedly difficult problem[1] has led to the conclusion that the first of the corollary rules just stated should be modified[2] to hold that property has been damaged for a public use within the meaning of the Constitution when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access; as before, this is a question of law for the Court.

These are the facts of impairment here. South 17th Street in Waco runs generally in a north-south direction and was the primary means of ingress and egress to the properties. In November of 1961, the City of Waco commenced the construction of a viaduct along South 17th Street for the purpose of elevating vehicular traffic over railroad streets and crossings. South 17th became a street with an upper and a lower level upon completion of the viaduct. We are concerned only with access to the properties from the lower level on which both the Texland and Kelly properties front. As depicted on the accompanying diagram, the properties are situated directly across the street from each other, Texland being on the west side and Kelly being on the east side of the street.

---

1. See generally Stoebuck, The Property Right of Access Versus the Power of Eminent Domain, 47 Texas L.Rev. 733 (1969).

2. We are again reminded, as we were in City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, 73 A.L.R.2d 640 (1958), of the observation in 1906 in Sauer v. City of New York, 206 U.S. 536, 27 S.Ct. 686, 690, 51 L.Ed. 1176, that:

"* * * The right of an owner of land abutting on public highways has been a fruitful source of litigation in the courts of all of the states, and the decisions have been conflicting, and often in the same state irreconcilable in principle. The courts have modified or overruled their own decisions, and each state has in the end fixed and limited, by legislation or judicial decision, the rights of abutting owners in accordance with its own view of the law and public policy. * * *"

S. 18th St.    S. 17th St.    S. 16th St.

N

One Way

Franklin Ave.

ARCHENHOLD

Concrete barrier

DUPUY

One Way    Mary Ave.    (Railroad Tracks)

TEXLAND    KELLY

Alley

17th Street Overpass

Jackson Ave.    (Railroad Tracks)

Webster Ave.

The viaduct which composes the upper level of South 17th Street is above the level of the roofs of the structures located on the properties. The north side of both properties is bounded by Mary Avenue, an east-west street which remains as it was. The Texland property is bounded on the north by Mary Avenue and on the east by the lower level of South 17th Street. The Kelly property is bounded on the north by Mary Avenue and on the west by South 17th Street. The viaduct is supported by piers which are located along the sides of lower South 17th Street. Each pier is five feet in diameter. From center to center, the piers are spaced north and south along the sides of the street each sixty-five feet. This means, however, that from the side of one pier to the side of the next one, there is actually only sixty feet of clearance. The piers, spaced in this manner, extend along the Texland side and the Kelly side of lower South 17th. The traversible opening for vehicles moving along the street is approximately twenty-two feet. Both the Texland and Kelly properties extend along South 17th Street for a distance of 165 feet. Three piers are located alongside each of the properties.

The area in which the properties are located is zoned for heavy industrial uses, and is in the manufacturing and warehousing district of Waco. Several witnesses testified that the piers along South 17th Street are so located that there is serious interference in approaching the Texland and Kelly properties. A pier is located almost directly in front of the loading dock and doors to the Kelly property, and a similar situation, though not so extreme, exists across the street with the Texland property. Witnesses testified about the difficulty of parking, backing and maneuvering vehicles, particularly transport vehicles serving the area. One witness testified: "It is most difficult, it is not impossible, but it is most difficult to maneuver a truck that would normally be in use, reasonably several times a day, several times a week, during the manufacturing and warehousing in this building here, to where these trucks would have adequate means and methods of getting in under these pilasters and columns here and maneuvering here in this area here, to back in and to load and unload in this piece of property. It is most difficult." Another witness testified concerning large transport trucks such as are used in warehouse and storage businesses: "It's hard for them to maneuver in and out of there, and some places it's almost impractical to get to."

■ We hold these facts establish a material and substantial impairment of access to the Texland and Kelly properties and that there has been a damaging of the properties for a public use. The judgments below are accordingly affirmed.

McGEE, Justice (concurring).

The Court has held that property may be damaged within the meaning of the Constitution when access through an appurtenant easement is "materially and substantially" impaired by the construction of a public improvement. This Court is in effect saying that a man's property may be damaged by a public improvement, but regardless of how much or how little damage may arise, if it is caused by an impairment of access, no compensation will lie unless the impairment is "material and substantial."

I do not find constitutional justification for this holding of the Court. Article 1, Sec. 17 of the Constitution of Texas, Vernon's Ann.Stat., provides that:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, * * *."

This article was adopted in 1876, replacing the language of the 1869 Constitution that "[N]o person's property shall be taken or applied to public use without

just compensation being made" with the phrase that adequate compensation shall be made whenever property is "taken, *damaged,* or destroyed" for public use. There is no limitation in this constitutional provision providing that adequate compensation for damage to property caused by a public improvement should not be paid if a resulting impairment of an easement of access is not "material and substantial." To this writer, this provision means that any damage, beyond that de minimis or nominal in nature, caused to property by impairment of its appurtenant easement of access is compensable irrespective of the degree of impairment.

Furthermore, to this writer, as a practical matter the determination of what constitutes a "material and substantial" impairment of an easement of access is if anything more difficult and uncertain than the determination of the today rejected standard of whether "reasonable access remains." Obviously, under the rule announced by the Court today, a whole street cannot be closed by the construction of a public improvement without compensation being paid to abutting landowners as was done in Archenhold Automobile Supply Co. v. City of Waco, 396 S.W.2d 111 (Tex. Sup.1965). But the question of what constitutes material and substantial impairment of access remains indeterminate and is, indeed, perhaps impossible to generally resolve.

Turning to the facts of the dispute at bar, both respondents abut 165 feet on South 17th Street, and assuming arguendo that the two pillars on the extremities of their abutment constitute an impairment of their adjacent easement of access, both respondents at worst have been denied less than ten per cent of their adjacent easement of access. If this is a "material and substantial" impairment, there seems little difference between the degree of impairment such a finding necessitates and a simple holding that whenever there is probative evidence of damage to property due to an impairment of an adjacent easement of ac-

cess caused by the construction of a public improvement, compensation may lie under Article 1, Sec. 17 of our Constitution.

In sum, today's introduction of a "substantial and material" standard limiting compensation is to my mind not only not in keeping with the intent of the Constitution but also a needless and unnecessary complication of the Article 1, Sec. 17 provision giving a cause of action to a landowner for damage to his property caused by construction of a public improvement.

I believe the proper interpretation of Article 1, Sec. 17 to be that the jury or court may award compensation for damage whenever there is evidence of probative force that there has been a diminution in value in abutting property because of an impairment of an adjacent easement of access caused by the construction of a public improvement.

I concur in affirming the judgments of the courts below.

CALVERT, C. J., and SMITH and HAMILTON, JJ., dissent.